I'd like to reserve about two minutes for a rebuttal to his family. If you watch the clock, I know I'm trying to help you. My name is David Fox. And I'm here on behalf of a poet, John Michael Crim. This is an appeal of three dismissals and three actions. It's been extensively briefed, and there is very thick record for cases decided on a motion to dismiss. Today, I want to hit three points in the limited time that I have for you. First, I'm going to argue that there is relief under Bivens v. Six of unknown federal agents for First Amendment retaliation in the Ninth Circuit. Let me ask you this. Councilman Alan Minnici v. Pollard of the Supreme Court addressed a very similar situation involving purported action trying to extend Bivens to an inmate's claim involving a private drone employee that was employed by a prison corporation or something like what we have here. And the court pointed out that in that situation, since it was a private entity, there would be no qualified immunity available to the officers. I'd like what would happen in a normal Bivens action. What has changed since the Supreme Court ruled in Moleskine? It should change our analysis of whether Bivens should apply here. Well, nothing's changed since Minnici, but Minnici is a distinguishable case. In that case, you're right that the status of the employees as private employees was very important in the holding of that matter. But that's because the claim alleged was a claim for Eighth Amendment cruel and unusual punishment. And in that case, the plaintiff alleged that he had suffered injuries, and that prison personnel had exacerbated those injuries through unconstitutional conduct. Now, what the court found was that he had a parallel tort remedy. He had a claim that he could have lodged for negligence, and because he could lodge that claim for negligence, which would not be available against a federal employee, then that alternative remedy precluded Bivens there. Now, in our case, especially concerning first and no retaliation, there's no parallel tort remedy. And further, as to the qualified immunity argument, even if these were federal employees, because in Criley Court stated that first, retaliating against an inmate for filing a grievance is a violation of clearly established law. Qualified immunity wouldn't even apply if they were federal employees. In this case, Cripp has stated the claim for first and no retaliation, and I want to focus on the claim that he has lodged against Dennis McBride, because I think that's the strongest case that's at issue here. What happened was Mr. Cripp lodged a discrimination complaint against his defendant, Stewart. He was in solitary confinement at the time, and then he met with Mr. McBride, his partner, Mr. Stein. And Mr. McBride told Mr. Cripp that first, his claim was not going to succeed. Second, that he would be in the special housing unit for 30 days if he proceeded with his claim. And then third, Mr. Cripp alleges that McBride told Cripp that if he pursued this claim, he would be transferred to another facility. Cripp dropped the discrimination complaint the next day. According to the factors laid out in McBride's crime, this is an adverse action. Threats count. Second, this was caused by him engaging in a protected activity. Third, a chilled speech. He withdrew the complaint the next day. And fourth, this particular action is not rationally related to any legitimate penological inserts. Now, the appellees make the point that Mr. Cram had alternate forms of relief, but he tried his best. He went through the Bureau of Prisons Administrative Program repeatedly, filing grievances that were denied with no rationale. This is not a case like Lucas v. Bush, where there's a big, complicated remedial structure. He had no hearing on any of this. And that's why the Ninth Circuit has repeatedly found evidence claims when filed by prisoners for constitutional violations. Now, because of Mr. Crimp's pro se status, his complaints were not given the federal construction that they should have been. And I want to go through the three actions as to why that's the case. In the first action, Magistrate Judge Austin initially got it right. What he did is he looked at all the allocations, and Mr. Crimp did not specifically allege a Bivens claim. He alleged a Section 1983 claim. But due to the requirement to constrain a complaint liberally, the court took the 1983 claim and found that it was actually a Bivens claim against the federal agents. Now, the court allowed the claim against Mr. McBride to go forward and dismissed the rest. This confused Mr. Crimp. Mr. Crimp had never heard of Bivens before, and he filed his objection saying, well, he didn't file a Bivens claim. He didn't know that the private employees could also act as federal agents. And the court took really the first paragraph of that objection and then used that to dismiss the whole claim on the basis of subject matter jurisdiction. If the court had read the objection further, it would have seen that actually Mr. Crimp was alleging constitutional claims. Still, he was alleging the retaliation claims, the due process claims. So, basically, from your perspective, because he was pro se, which means true and liberally, even though he said he wasn't persuading a Bivens claim, in fact, he was, and the magistrate judge should have understood that. Yes, Your Honor. This is a subject matter jurisdiction problem. It was subject matter jurisdiction. So, they should have gotten ahead of that jury. That's my argument. Correct, Your Honor. And that's clear on the face of the complaint itself. This is not like the- That was pretty clear at that part, but probably you're second than they do here first. Sure, Your Honor. You're talking about the claim, the retaliation claim, which relates to the Inmate Financial Responsibility Program. Is that correct? I recognize that that claim is not as strong. You have to piece together the puzzle from the Bivens and the complaint and it's not nearly as clear. And, you know, there's a lot more justification for dismissing it. I recognize that. Now, what's important to note here is this was initially filed as all one action, and initially Magistrate Judge Austin filed a claim for first-member retaliation arising out of the consequences of these IFRP actions against Ms. Mann and Mr. Patrick. Then he, Magistrate Judge Austin, said he has to split the action in two. So then it was sent to the Magistrate Judge Beck. And I'm just talking about the claim against Mann and Patrick. Magistrate Judge Beck didn't construe the complaint liberally. He looked at the claims that were alleged, which was a Fifth Amendment violation of due process and a conspiracy claim, and found that Mr. Cram did not stand claim on those grounds. And, you know, to be honest, the court had good grounds for doing so. But the court didn't look at the complaint as a whole to see that there actually, and look at the affidavit, that there could be a claim for first-member retaliation. Now, the big issue that we have with the second action is that it was dismissed with prejudice. Oh, I'd like to, I'll pause it from here, and we'll save this for later. Good morning. May it please the Court, my name is Heidi Adams, and I represent the employees and the respondents in this case. As a threshold matter, I want to make a couple of points. First, I want to urge the Court to look at the actual pleadings in this matter, and look at what was alleged against each individual defendant. As this Court is well aware, under the Eichwald case, the requirement is that the pleading parties state a cause of action against each defendant, and they must believe that the defendant, through that defendant's own individual action, has violated the Constitution. That's true. I don't think there's a whole lot of extra inclusion for these cases. I'm sympathetic to what was going on in the Eastern District of California. They've done a great job developing all sorts of programs to move it along. But I will suggest a cause of action, one in theory, as to whether or not there was sufficient latitude given. The second action that's a little more troubling for the plaintiff, but I think he met the burden on the first and third, so maybe he could focus on that. I'm concerned that we push that too quickly. We have two magistrate judges, we have two district judges, and sometimes they don't get through the way they maybe should. So focus on those concerns. Sure, yeah. So I think, as you had mentioned previously, the concern is with the retaliation claim and us having to deal with the IFRP participation, or the IFRP request. Again, you know, with many of these defendants, I think CRIM just simply didn't meet the standard of pleading actions by those defendants that would amount to adverse actions and that would amount to retaliation. So if you look at the individual defendants, for instance, you look at Simon, there were virtually no allegations that he took any adverse actions whatsoever. The allegations are that he merely attended a meeting with my client and stayed completely concerned. Patrick, there's no allegations whatsoever as to Patrick, as to the IFRP issue. Liam is asking you to make an unwarranted inference in assuming that those allegations are there. They're simply not there. Logan was the DHO. There are no allegations that he took adverse actions because of the IFRP grievances. They did show that he was merely sanctioned CRIM for insolence towards Stuart. Stuart, there's no allegations that she took adverse actions related to the IFRP grievances. Her actions also relate to the insolence. So I think an important fact that the court needs to look at in these cases is the fact that there was actually, and this is well-plaid, there was an act of insolence towards Stuart. CRIM was charged with insolence if he was sanctioned accordingly, and CRIM in his briefs would have you simply ignore that fact and he makes it sound like it's all related to the IFRP grievance when that is simply not. What is that? That issue may have went on in the financial trial, but the question is whether there was subject matter jurisdiction here. Okay. Let's go to the third option. Okay, sure. So with regard to the third option, one point that I did want to make, and I stress this in my brief, but I want to stress it here, is that CRIM's second action was dismissed for failure of C to claim. That was CRIM's third strike. So CRIM should not have been allowed to appeal the third action at all, pursuant to Section 1915, and I think the law is very clear on that. Yes, but if that third action was right on his appeal, then it's no fair strike. Well, I think that the second action was the third strike. The second action was the third strike. If his appeal and the second action were reaffirmed in reverse, then there would be no third strike. That's correct. So addressing the issue of the dismissal of the third action, I just want to point out that this Court can affirm a dismissal on any grounds, even if the district court didn't reach that issue or relate a different reasoning or different grounds. Sorry, you're talking about the first action. No, I'm not. You were talking about the first action. In that case, the CRIM unequivocally stated that he was not bringing up evidence of action and that he was not suing out federal officials. You said that. But if you read what he wrote in his complaint and what he said, he goes right on to start talking about the Constitution relates with violations. What happened to him? And he's on a lot of train, and we're supposed to look like it's true, and how it's getting to this point. My brain gets hurt when I start to say, oh, what do I do with him? Well, we're supposed to believe the specificity of what we do with the guy who's on a lot of train. And he throws some facts around, and they're incensed. And you want us to hold him to a standard. We said, well, he abandoned his claim because with one hand he says, pivots, pivots, what's this pivots thing? Because I got no pivots. And then if you look at what he goes on to talk about, it's sort of classic pivots stuff. Right? I mean, are we really going to take a grocery guy and throw him out of the train at that moment? Well, he also says, you know, that he's not suing any federal actors, and I think that's important as well. And I think it's also important to note that, you know, his statement that he's not making a pivots claim is also consistent with how he strives his claim in the first action of his third amendment complaint. And in that complaint, he said he's proceeding under 42 U.S.C. section 19, duty three, against the actors. So, and then I would also draw the court's attention to the Blaisdell case, which, you know, dealt with a similar situation with an info proclative, who specifically stated that he was not bringing a retaliation claim. The Ninth Circuit rejected Blaisdell's argument on appeal, and the court should simply ignore that statement, saying that Blaisdell is asking us to take up on appeal the claim, which he clearly told the district court he was not bringing. We declined to do so. Liberal construction cannot turn Blaisdell's explanation about what his case is not into a description about what his case is. So, I reject that very argument. We've got a little different situation here in this first action court. The district judge dismissed the lack of subject matter jurisdiction. Yes. And subject matter could be 1983 or could be a visitor's. Now, having in mind that this is a pro se customer, it strikes me that there is subject matter jurisdiction. So, if that's true, why wouldn't we reverse the first cost of action and send it back through the consideration? Well, yeah, I think if you look at what he said, and he said that he's not bringing a women's action, he's not suing federal actors, I think arguably there's no subject matter jurisdiction based on his defense. I just brought you a statement of a person of pro se, but that's the person we're dealing with, isn't it? A good lawyer, as you are. And I'm just wondering whether the judge should have been a little more directive. But that's the issue, and I'm glad you can free your argument, because I understand it. Let me just ask you this thing. Putting aside for a moment whether there was a women's claim, after Mr. Graham said there wasn't, how are we to apply a qualifiable in this situation? Let's assume that there's no argument about the women's action. Are you claiming that this was not a possible claim and that we strike it because it doesn't meet the plausibility standard? I think the way that I was applying it, Paul, is that the plaiting standard requires someone who's completing a complaint to make allegations against each individual defendant. And in this case, in the case of retaliation, that means that that person has to allege that each individual defendant took adverse actions against them because of their protective conduct. And I don't think we're familiar with that. So, from your perspective, putting aside for a moment the pivot aspect, Mr. Graham, even though he treated his plaiting liberally, simply didn't make any allegations of retaliation against a number of people and therefore can't possibly reply to them because there's no allegations. Is that what you're saying? I'm saying the allegations against this group. Those eight people that you talked to? Yeah. They didn't meet the standard. Okay. I would add to that because he just relaxed subject matter jurisdiction. So it seems to me that it was the magistrate judge, the district judge, was wrong on that issue. And if he hadn't realized the subject matter jurisdiction, he would proceed it further to try and sort out what the problem is. But he never got to that point. That's the part that bothers me. But I think before that he did get to that point for a number of the defendants. Do any of my colleagues have any additional questions? I think your time has been used. Thank you very much. I appreciate it. Counsel, do you have a rebuttal? Okay. Please. Thank you. I want to quickly address two points. First, with respect to the dismissal for lack of subject matter jurisdiction, I think Judge Wallace raised a good point. There is subject matter jurisdiction over Section 1983 Clay. He would have to get to the merits then to do a dismissal under Rule 12B6, which he didn't do. Second, under McQuaw and Lomley, those cases concerned pleading adequate facts to allow a claim to go forward. Clearly, Mr. Crims pleaded adequate facts, as did Mr. McBride. As to some of the other individuals, the facts are scattered. And there are facts in the affidavit, there are facts in the complaint. We ask that if the court finds that those are insufficient, that the court allow leave to amend for Mr. Crim to correct his errors. And finally, the Blightsdale case that Counsel mentioned, that's a case where a plaintiff disclaimed factual allocations. He said that he wasn't asserting that he was being retaliated against for filing prior litigation. Mr. Crim withdrew no factual allegations. He said he wasn't making a vivid claim, but he didn't understand what that meant, and he didn't understand that private actors could act as federal agents. That's all I have to say to that question. Well, we thank you both. The briefing on this case is very helpful, and we thank you for that. The case disargued is submitted.
judges: Wallace, M. Smith, Erickson